DAVID YUDELSON (SBN 325316)
dyudelson@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 909-7775
Facsimile:  (424) 465-6630

Attorneys for Plaintiff INFORMATION SYSTEMS & NETWORKS CORPORATION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION,<br><br>                        Plaintiff,<br><br>     v.<br><br>SHARON HERITAGE, individually and as Executor of the ESTATE OF NICHOLAS LARSEN SAAKVITNE; the ESTATE of NICHOLAS L. SAAKVITNE; NICHOLAS L. SAAKVITNE, a law corporation; NICHOLAS L. SAAKVITNE, Trustee of the Saakvitne ERISA Group Trust; SAAKVITNE ERISA GROUP TRUST, an entity owned and controlled directly or indirectly by Nicholas L. Saakvitne; NICHOLAS L. SAAKVITNE OF INFORMATION SYST. & NET. EMPLOYEES' PENSION PLAN; NICHOLAS L. SAAKVITNE, as the independent fiduciary of the Information Syst. & Net. Employees' Pension Plan; NICHOLAS L. SAAKVITNE as the Plan Administrator of the Information Syst. & Net. Employees' Pension Plan; STEVEN ROSEBAUGH, as Successor Trustee to Nicholas L. Saakvitne of a DOE trust of unknown form; US BANK, a Delaware Corporation; SANTA MONICA BANK, a California Corporation and DOES 1-50,<br><br>                        Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF FIDUCIARY DUTY OF LOYALTY;**<br><br>2. **BREACH OF DUTY OF PRUDENCE;**<br><br>3. **VIOLATION OF ERISA'S PROHIBITED TRANSACTION PROVISIONS;**<br><br>4. **SURCHARGE;**<br><br>5. **INJUNCTIVE RELIEF;**<br><br>6. **INTENTIONAL MISREPRESENTATION;**<br><br>7. **PROFESSIONAL NEGLIGENCE;**<br><br>8. **NEGLIGENT MISREPRESENTATION;**<br><br>9. **NEGLIGENCE** |

1

Plaintiff INFORMATION SYSTEMS & NETWORKS CORPORATION ("Plaintiff" or "ISN"), as the Sponsor of the Information Systems & Networks Corporation Employees' Pension Plan (the "Plan"), for their claims against Defendant NICHOLAS L. SAAKVITNE, A LAW CORPORATION (the "Saakvitne Law Corporation" or "SLC"), Defendant SAAKVITNE ERISA GROUP TRUST ("Saakvitne Group Trust" or "SGT"), Defendant / Decedent NICHOLAS L. SAAKVITNE ("Saakvitne"), the ESTATE OF NICHOLAS LARSEN SAAKVITNE ("Saakvitne Estate"), Defendant SHARON HERITAGE, individually and as Trustee of the Estate of Nicholas L. Saakvitne ("Heritage"), Defendant STEVEN ROSEBAUGH, as a Successor Trustee of a DOE trust of unknown form at all times relevant herein ("Rosebaugh") US BANK, a Delaware Corporation ("USB"); SANTA MONICA BANK, a California Corporation ("SMB") (collectively the "Defendants"), state and allege as follows:

## NATURE OF THE ACTION

1.  ISN is seeking the recovery of millions of dollars that ISN contributed to the Plan, which are subject to the Employment Retirement Income Security Act of 1974, as amended, ("ERISA"). Before his death in 2018, Saakvitne misappropriated these Plan assets through a complex web of transfers to personal and other accounts, and by abusing his role as an appointed, independent fiduciary of the Plan. The transfers of Plan assets were made without the knowledge or approval of the Plan Sponsor, and in violation of numerous provisions of ERISA.

2.  Saakvitne, under the guise of his role as a fiduciary to the Plan and its participants and beneficiaries, unlawfully took possession and control of millions of dollars of Plan assets when he transferred them to an account (or accounts) over which Defendants have exercised, and continue to exercise control. Saakvitne, and one or more of the Defendants, disguised this theft of Plan assets while systematically transferring millions of dollars from the Plan to their own account(s), and for their own personal benefit.

3.     The scheme Saakvitne executed to siphon Plan assets for his own personal gain was convoluted, and therefore ISN was prevented from discovering the improper theft of Plan assets until after Saakvitne's death, which occurred on or about October 2, 2018.

4.     After his death, ISN began to uncover that all of the Defendants, are, upon information and belief, still exercising some level of control over Plan assets. Consequently, all of the Defendants have been named in this action, to preserve ISN's rights to the return of the recoverable Plan assets.

5.     In fact, ISN is still attempting to determine the whereabouts of all the contributions that were stolen, and reserves the right to amend this Complaint, to relate back to this date, to include additional claims and defenses.

## PARTIES

6.     ISN is, and was at all times relevant herein, a Maryland corporation, duly registered to conduct business in the state of California. At all relevant times to the claims herein, ISN sponsored the Plan under Section 3(16)(B) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. 1002 (16)(A). As a fiduciary with respect to the Plan, ISN may bring this action pursuant to ERISA §502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) and (a)(3).

7.     Defendant SLC is and was at all times relevant herein a California corporation.

8.     Defendant Saakvitne Group Trust, is and was at all times relevant herein an entity owned and controlled directly or indirectly by Saakvitne and/or other Defendants and for which, upon information and belief, Saakvitne served as trustee.

9.     At all relevant times, Saakvitne was a resident and citizen of California, a Trustee of the Saakvitne ERISA Group Trust, and the functional head of SLC. Saakvitne also served simultaneously as the Plan Administrator and independent fiduciary of the Plan.

10. Due to his death in 2018, the Saakvitne Estate was created when Saakvitne's will was admitted to probate in the Superior Court of California, County of Los Angeles, on or about June 29, 2020, styled *In Re the Estate of Nicholas Larsen Saakvitne*, Case No. 19STPB09359.

11. Heritage is, upon information and belief, widow of Nicholas L. Saakvitne ("Saakvitne"), and was at all times relevant herein a citizen of the state of California. Heritage is the Executor of the Estate, and is also named herein in her capacity as Executor, a position to which she was appointed on or about August 4, 2020. Upon information and belief, Heritage was an employee of SLC and/or the Saakvitne Group Trust.

12. Defendant STEVEN ROSEBAUGH is or was a Successor Trustee to Nicholas L. Saakvitne of a DOE trust of unknown form at all times relevant herein.

13. Defendant US BANK ("USB") is Delaware Corporation, and, upon information and belief, is named nominally herein in its capacity as a potential custodian of funds that are the subject of the claims in this Complaint.

14. Defendant SANTA MONICA BANK ("SMB") is a California corporation, and, upon information and belief, is named nominally herein in its capacity as a potential custodian of funds that are the subject of this Complaint.

15. Plaintiff is unaware of the true names and capacities of DOES 1 through 50, inclusive, and accordingly, sues said defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of said defendants is, in some fashion, responsible for the activities and actions herein alleged. When the true names and capacities of such fictitiously named defendants are ascertained, Plaintiff will amend this Complaint to allege the same.

16. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendants, and each of them, were acting as agents, servants, employees, partners, and/or principals of each other and, in committing the acts and omissions alleged hereinafter, were acting within the course and scope of their duty

and authority with the permission, knowledge, consent, and ratification of each of the remaining Defendants.

17. Discovery will be needed to confirm which of the Defendants is in possession of which portion(s) of the Plan assets, but all Defendants have been named based on the good-faith belief that each, to one degree or another, has access and control over Plan assets that are not rightfully in their possession, or that can be ordered to be transferred to Plaintiff's possession.

## **JURISDICTION AND VENUE**

18. This Court has jurisdiction over the subject matter over Plaintiff's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331. Supplemental jurisdiction for Plaintiff's state law claims exists by virtue of their relation to Plaintiff's ERISA claims, which fall under the Court's original jurisdiction, and make the state law claims proper under 28 U.S.C. § 1367.

19. Venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because this is the District where defendants breaches and omissions took place and where the defendants reside or may be found.

## **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

### A. The Plan and Saakvitne's Appointment as Independent Fiduciary

20. The Plan was established in 1982 to provide retirement benefits to eligible employees of ISN. The Plan was established and maintained by ISN for their exclusive benefit. According to ERISA and the Plan, the only individuals entitled or legally able to benefit from the Plan were and are the participants and beneficiaries of the Plan.

21. The Plan was funded through the employer contributions of ISN.

22. Over time, ISN has contributed millions of dollars to the Plan. After a dispute with the United States Department of Labor ("DOL"), an independent fiduciary was appointed to oversee financial management of the Plan, although ISN remained the Plan sponsor and continued to make contributions to the Plan. ISN has

contributed millions to the Plan.

23. In 2009, after the resignation of a second independent fiduciary that the DOL had appointed, the DOL appointed Saakvitne as the successor independent fiduciary of the Plan.

24. The Plan's 2009 Form 5500 Annual Return/Report, signed electronically by Saakvitne as Plan Administrator, shows beginning of the year assets of $4,953,134 and end of year assets of $5,461,568.

**B. Saakvitne's Fraudulent Scheme**

25. Beginning sometime in late 2009 and into 2010, upon information and belief, Saakvitne took steps to attempt to terminate the Plan. It is believed and thereon alleged that Saakvitne applied under the Internal Revenue Service's Voluntary Compliance Program ("VCP") in April of 2010 to accomplish the Plan termination.

26. However, under ERISA, and according to its terms, the Plan could not be terminated without a certified copy of a resolution of the Board of Directors of ISN authorizing its termination and written notice of the same. No such resolution or notice has ever been authorized by the ISN Board of Directors.

27. Moreover, the ability to adopt, modify, or terminate an ERISA plan, like the ISN Plan, is reserved for the plan sponsor alone. *See Lockheed Corp. v. Spink,* 517 U.S. 882, 890 (1996) ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.").

28. In contrast to Plan Sponsors, fiduciaries cannot unilaterally adopt, modify, or terminate an ERISA plan.

29. When ISN found out about Saakvitne's attempt to terminate the Plan, ISN contested this VCP filing with the IRS. Upon information and belief, the IRS refused to rule on and rejected the VCP request. Thus, because the Plan termination was not approved by ISN (as Plan Sponsor), the Plan was not terminated.

30. Notwithstanding, and upon information and belief, on or about March 17, 2010, Saakvitne used his position as an independent trustee of the Plan to transfer funds from the Plan's previous custodial account, to a new custodial account at USB. Saakvitne's intent was to defraud ISN, the Plan, and the participants and beneficiaries, by placing the Plan assets into an account that only he could access.

31. Saakvitne instructed the custodian of the Plan's funds, U.S.B. to establish a new sub-custodial account out of the Plan's group trust in the name of "Nicholas L. Saakvitne of Information Syst. & Net Employees Pension Plan," and to transfer the balance of the Plan account to the new subaccount at its earliest convenience.

32. Saakvitne represented to USB that he was liquidating the Plan, which was not approved of or authorized by ISN, and the "liquidation" Saakvitne contemplated was the fraudulent taking of Plan assets for his own benefit.

33. USB followed the instruction from Saakvitne and created a new custodial account that only Saakvitne could access.

34. Saakvitne accomplished this secretive transfer of funds without the knowledge or approval of ISN.

35. Thereafter, until his death in 2018, and during the time period while Saakvitne was serving as the appointed Independent Fiduciary, Plan Administrator and Trustee, Saakvitne began siphoning the funds (Plan assets) out of USB and transferring them among a secret web of other accounts that Saakvitne used for his own purposes, including SMB.

36. Upon information and belief, Saakvitne, through the SLC, the Saakvitne Group Trust, and with the assistance of Hertitage and one or more other Defendants, transferred and absconded with millions of dollars from the Plan's accounts and subaccounts, and into personal accounts that Saakvitne and/or Heritage controlled and kept hidden, including Saakvitne's other trust agency accounts, his family accounts, and other accounts controlled by Saakvitne as a fiduciary or

otherwise.

37. It is believed and thereon alleged that that those accounts, and Plan assets are currently held with one or more banks, including USB and SMB. Again, USB and SMB are only alleged to be custodians of funds, received without knowledge of Saakvitne's and others' fraudulent intent and scheme.

38. As the Plan sponsor of a tax-qualified, ERISA governed retirement plan such as the Plan, ISN may not terminate that Plan until the Plan assets have been used to pay all Plan participants and beneficiaries the vested, promised plan benefits to which they are entitled, after which, any remaining Plan assets are distributed in accordance with Plan terms.

39. Certain Plan benefits remain unpaid to this date, and any excess or forfeited benefits that remain after full payment of all properly payable benefits, any assets remaining are to be distributed to the Plan sponsor, ISN, in accordance with Plan terms.

40. Because the Defendants do not have the right to control any Plan assets, recovery of those assets is critical. Upon information and belief, each of the Defendants has knowledge of the whereabouts of the Plan assets, and the ability to control and direct their proper payment to ISN.

## FIRST CAUSE OF ACTION

**(Breach of Fiduciary Duty of Loyalty, ERISA §§ 404(a)(1)(A), 502(a)(2) and 29 U.S.C. § 1132(a)(2))**

41. Plaintiff realleges and incorporates by reference Paragraphs 1 through 40, inclusive, as if the same were fully set herein.

42. ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(a), provides that a fiduciary shall discharge his or her duties with respect to a plan solely in the interest of the plan's participants and beneficiaries and for the exclusive purpose of (i) providing benefits to plan participants and their beneficiaries, and (ii) defraying reasonable expenses of administering the plan.

43. At all relevant times, Defendants were fiduciaries with respect to the Plan pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because they exercised authority and control respecting the management or disposition of the Plan's assets.

44. Indeed, the Ninth Circuit "construe[s] ERISA fiduciary status liberally, consistent with ERISA's policies and objectives." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (noting that the Ninth Circuit "construe[s] ERISA fiduciary status liberally, consistent with ERISA's policies and objectives" and that ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan."). As the Ninth Circuit has explained: "Thus, ERISA . . . fiduciaries include not only those specifically named in the employee benefit plan, 29 U.S.C. § 1102(a), but also any individual who 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets.'" *Johnson v. Couturier*, 572 F.3d at 1076 (citing 29 U.S.C. § 1002(21)(A)(i)).

45. Defendants were exercising authority and/or control over the Plan's assets when they improperly transferred funds out of Plan accounts into other miscellaneous accounts, including into personal accounts owned or controlled by Saakvitne and/or Heritage, his other trust agency accounts, his family accounts, and accounts controlled by Saakvitne and/or other Defendants as a fiduciary, in an amount to be proven at trial.

46. In creating, orchestrating, facilitating, and/or participating in this fraudulent scheme, and with each act of fraud, Defendants violated the terms of the Plan and ERISA, and their fiduciary duty of loyalty to act solely in the interest of the Plan's participants. By virtue of these breaches of the fiduciary duty of loyalty, the Plan was damaged in an amount to be shown according to proof.

## SECOND CAUSE OF ACTION

**(Breach of Fiduciary Duty of Prudence and Care, ERISA §§ 404(a)(1)(B), 502(a)(2) and 29 U.S.C. § 1132(a)(2))**

47. Plaintiff realleges and incorporates by reference Paragraphs 1 through 46, inclusive, as if the same were fully set herein.

48. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(b), provides that a fiduciary shall discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent personal acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

49. At all relevant times, Defendants were fiduciaries with respect to the Plan pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because they exercised authority and control respecting the management or disposition of the Plan's assets.

50. Defendants were exercising authority and/or control over the Plan's assets when they improperly transferred funds out of Plan accounts into other miscellaneous accounts, including into personal accounts owned and controlled by Saakvitne and/or Heritage, his other trust agency accounts, his family accounts, and accounts controlled by Saakvitne and/or other Defendants as a fiduciary, in an amount to be proven at trial. This exercise of authority and control over the Plan's assets, and Defendants' misappropriation of the Plan's funds, requires that Defendants be deemed fiduciaries under ERISA.

51. In creating, orchestrating, facilitating, and/or participating in this fraudulent scheme, and with each act of fraud, Defendants violated the terms of the Plan and ERISA and their fiduciary duty of prudence to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent personal acting in a like capacity and familiar with such matters would use in the

conduct of an enterprise of a like character and with like aims.

52. By virtue of these breaches of the fiduciary duty of care, the Plan was damaged in an amount to be shown according to proof.

## THIRD CAUSE OF ACTION

**(Violation of ERISA's Prohibited Transactions Provisions,**

**ERISA § 406(b)(1) and (3), 29 U.S.C. § 1106(b)(1) and (3)**

**ERISA § 406(a)(1)(D), and 29 U.S.C. § 1106(a)(1)(D))**

53. Plaintiff realleges and incorporates by reference Paragraphs 1 through 53, inclusive, as if the same were fully set herein.

54. ERISA § 406(b), 29 U.S.C. § 1106(b), provides, in relevant part, that "[a] fiduciary with respect to a plan shall not –

> (1) deal with the assets of the plan in his own interest or for his own account, …or
>
> ***
>
> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

55. Defendants were exercising authority and/or control over the Plan's assets when they improperly transferred funds out of Plan accounts into other miscellaneous accounts, including into accounts owned by Saakvitne and/or Heritage, his other trust agency accounts, his family accounts, and accounts controlled by Saakvitne and/or other Defendants as a fiduciary, in an amount to be proven at trial. This exercise of authority and control over the Plan's assets, and Defendants' misappropriation of the Plan's funds, requires that Defendants be deemed fiduciaries under ERISA.

56. In creating, orchestrating, facilitating, and/or participating in the fraudulent transfer of the Plan's assets, Defendants dealt with the Plan's assets for their own interest.

57. Defendants caused funds to be transferred out of Plan accounts to other non-Plan accounts under the authority and control of Defendants. In so doing, Defendants engaged in transactions prohibited by ERISA §406(b), 29 U.S.C. § 1106(b) on each occasion that the Defendants fraudulently transferred funds from the Plan's participants' accounts to their own accounts.

58. Moreover, as parties in interest to the Plan, Defendants engaged in transactions prohibited by ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), on each occasion on which they fraudulently obtained the Plan's assets through the transfer of the Plan's assets to their own accounts in that they transferred assets of the Plan to, for the use by, or for the benefit of a party in interest.

59. By virtue of engaging in these prohibited transactions, Defendants violated the terms of the Plan, and breached their fiduciary duties held to the Plan, Plaintiff, and the Plan's participants, and damaged the Plan in an amount to be shown according to proof, plus lost earnings or interest thereon, and the Plan and participants must be compensated for the loss resulting from Defendants prohibited transactions in an amount to be shown according to proof and/or a constructive trust or equitable lien should be imposed on the Saakvitne's estate in an amount to be shown to compensate for the loss.

## FOURTH CAUSE OF ACTION
**(Surcharge, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

60. Plaintiff realleges and incorporates by reference Paragraphs 1 through 59, inclusive, as if the same were fully set herein.

61. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a fiduciary may bring a civil action to "(A)…enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

62. During the time of the divided bench, courts sitting in equity "possessed the power to provide relief in the form of monetary "compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *CIGNA Copr. V. Amaara*, 563, U.S. 421, 441-42 (2011).

63. This "surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id*. The surcharge remedy "fall[s] within the scope of the term 'appropriate equitable relief in § 502(a)(3)." *Id*.

64. Defendants were exercising authority and control over the Plan's assets when they improperly transferred funds out of Plan accounts into other miscellaneous accounts, including into accounts owned by Saakvitne and/or Heritage, his other trust agency accounts, his family accounts, and accounts controlled by Saakvitne and/or other Defendants as a fiduciary, in an amount to be proven at trial. This exercise of authority and control over the Plan's assets, and Defendants' misappropriation of the Plan's funds, requires that Defendants be deemed fiduciaries under ERISA. Return of an amount to be shown according to proof is required to prevent Defendants' unjust enrichment.

65. By virtue of these breaches, as so far discovered, the Plan was damaged in an amount to be shown according to proof.

66. Plaintiff and the Plan and participants must be compensated for the loss resulting from Defendants' breaches of fiduciary duty in an amount to be shown according to proof and/or a constructive trust or equitable lien should be imposed on the Saakvitne's estate in an amount to be shown to compensate for the loss.

## FIFTH CAUSE OF ACTION
### (Injunctive Relief / Restitution Against All Defendants
### ERISA §503(a)(3), 29 U.S.C. § 1132(a))

67. Plaintiff realleges and incorporates by reference Paragraphs 1 through 66, inclusive, as if the same were fully set herein.

68. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a fiduciary may bring a civil action to "(A) .. enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations, or (ii) to enforce any provision of this subchapter or the terms of the plan."

69. Equitable remedies under ERISA include, but are not limited to, injunction, mandamus, and restitution.

70. Each of the Defendants exercised authority and control over Plan assets by working in concert with Saakvitne or by receiving Plan assets from Saakvitne's actions, or both. In either case, having not returned those assets, each of the Defendants is unlawfully asserting authority and control over those assets, thus making them fiduciaries under ERISA, and making each of them in violation of the terms of the Plan.

71. Plaintiff requests injunctive relief that: (i) enjoins every Defendant from further transferring, disposing of, or otherwise dealing in any of the Plan's assets, (ii) orders the Defendants to return any assets that were fraudulently transferred or received from the Plan, (iii) bars Defendants thereafter from acting in any capacity with respect to Plan assets.

## SIXTH CAUSE OF ACTION
### (Intentional Misrepresentation)

72. Plaintiff realleges and incorporates by reference Paragraphs 1 through 71, inclusive, as if the same were fully set herein.

73. At all times relevant, Defendants acted as fiduciaries with respect to the Plan. Between approximately 2009 and 2020, Defendants willfully, intentionally, and recklessly represented to Plaintiff, among other things, that as fiduciaries of the Plan, they were managing, controlling, and administrating the Plan, including the Plan assets, for the benefit of Plaintiff.

74. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, intentionally represented to Plaintiff between 2009 and 2020, that Defendants were running the Plan solely in the interest of Plaintiff and for the exclusive purpose of providing benefits and paying plan expenses.

75. While acting as fiduciaries of the Plan, Defendants willfully, intentionally, and recklessly represented to Plaintiff that they were following the terms of the Plan documents and were not engaging in any transactions on behalf of the Plan that benefited Defendants.

76. The representations made by Defendants between 2009 and 2020 were false. Defendants were not managing, controlling, or administrating the Plan and the Plan assets to the benefit of Plaintiff. Defendants were not running the Plan for the sole interest of Plaintiff but instead, used the Plan and Plan assets to engage in transactions that directly benefited Defendants.

77. Defendants knew that the representations were false at the time they made them to Plaintiffs, or in the alternative, Defendants made the representations recklessly and without regard for their truth.

78. In representing to Plaintiff that Defendants were controlling, managing, and administrating the Plan and the Plan assets as fiduciaries solely for the exclusive benefit of Plaintiff, Defendants intended that Plaintiffs rely on the representations.

79. Plaintiff reasonably relied on Defendants' representations. As a result of Defendants' intentional representations, Plaintiff was substantially influenced into believing that Defendants were acting, managing, controlling, and administrating the Plan and Plan assets for the benefit of Plaintiff.

80. As a result of Defendants' intentional and willful misrepresentations, Plaintiff was harmed. Plaintiff's reliance on Defendants' representations was a substantial factor in causing its harm.

81. As a result of Defendants' intentional misrepresentations, Defendants, between 2009 and 2020, fraudulently, intentionally, and willfully directed several

fraudulent transfers from participant accounts in the Plan to Defendants' accounts, according to proof. Despite Defendants' representations to Plaintiff, Defendants improperly transferred funds out of ISN accounts into other miscellaneous accounts, including into Decedent's own personal accounts, his other trust agency accounts, his family accounts, and accounts controlled by Decedent as a fiduciary, in an amount to be proven at trial.

82. Through a system of fraud and deceit, Defendants stole millions of dollars from the Plan and the Plan's participants so as to justify an award of exemplary and punitive damages against Defendants. Due to the extreme depravity of Defendants' conduct, Plaintiff seeks damages in an amount to be shown according to proof, and an award of punitive and exemplary damages against Defendants.

## SEVENTH CAUSE OF ACTION
### (Professional Negligence)

83. Plaintiff realleges and incorporates by reference Paragraphs 1 through 82, inclusive, as if the same were fully set herein.

84. Between 2009 and 2020, the Saakvitne and the entities he controlled exercised discretionary control, authority, and responsibility over the management and administration of the Plan and Plan's assets. By exercising authority, control, and responsibility of the Plan and Plan's assets, they acted as fiduciaries of the Plan.

85. As fiduciaries of the Plan, Saakvitne was under a duty to control and manage the Plan solely in the interest of Plaintiff. Defendants were under a duty to use such skill, prudence, and diligence as other professionals who exercise discretionary control or authority over plan management or plan assets would in similar circumstances.

86. Between 2009 and 2020, Defendants caused transfers of a substantial amount of money from the Plan to Defendants' own accounts, including into Decedent's own personal accounts, his other trust agency accounts, his family accounts, and other accounts controlled by Decedent. Defendants caused these

transfers through the exercise of their authority and control over the Plan and Plan assets as the fiduciaries of the Plan.

87. By facilitating and participating in the transfers of millions of dollars from the Plan to Defendants' own accounts, Defendants breached the high standard of professional care it owed to Plaintiff and the Plan. Defendants, as fiduciaries, violated the terms of the Plan and failed to act with the care, skill, prudence, and diligence as other professionals would have done in similar circumstances.

88. As a result of Defendants' failure to act use such skill, prudence, and diligence as other professionals would have in similar circumstances, Defendants caused harm to Plaintiff in an amount to be shown according to proof.

## **EIGHTH CAUSE OF ACTION**
### **(Negligent Misrepresentation)**

89. Plaintiff realleges and incorporates by reference Paragraphs 1 through 88, inclusive, as if the same were fully set herein.

90. At all times relevant herein, Defendants acted as fiduciaries of the Plan and Plan assets. Between approximately 2009 and 2020, Defendants represented to Plaintiff that as fiduciaries of the Plan, they were managing, controlling, and administrating the Plan, including the Plan assets, for the benefit of Plaintiff.

91. During this time, Defendants, and each of them, represented to Plaintiff that Defendants were running the Plan solely in the interest of Plaintiff and for the exclusive purpose of providing benefits and paying plan expenses.

92. Defendants represented to Plaintiff that they were following and abiding by the terms of the Plan documents and were not engaging in any transactions on behalf of the Plan that benefited Defendants.

93. The representations made by Defendants between 2009 and 2020 were not true. Although Defendants may have believed that their representations as fiduciaries of the Plan were true, Defendants had no reasonable grounds for believing the representations were true when they made them and continuing to

make them to Plaintiff.

94. In representing to Plaintiff that Defendants were controlling, managing, and administrating the Plan and the Plan assets as fiduciaries solely for the benefit of Plaintiff, Defendants intended that Plaintiffs rely on the representations.

95. Plaintiff reasonably relied on Defendants' representations that they would follow the terms of the Plan and control and manage the Plan and the Plan assets for the benefit of Plaintiffs.

96. As a result of Plaintiff's reliance on Defendants' representations, Plaintiff were harmed in an amount to be shown according to proof.

## NINTH CAUSE OF ACTION

### (Negligence)

97. Plaintiff realleges and incorporates by reference Paragraphs 1 through 96, inclusive, as if the same were fully set herein.

98. Between 2009 and 2020, Defendants acted as fiduciaries of the Plan and the Plan's assets. As fiduciaries of the Plan and Plan's assets, Defendants owed Plaintiff a duty to use reasonable care in the control and management of the Plan. Defendants owed Plaintiff a duty to use reasonable care in following the terms of the Plan, avoid conflicts of interest, and use the Plan for the exclusive purpose of providing benefits and paying plan expenses per the Plan documents.

99. Defendants controlled and failed to manage and control the Plan and Plan assets as a reasonable person would have in similar circumstances. Between 2009 and 2020, Defendants unreasonably caused transfers of a substantial amount of money from the Plan to Defendants' own accounts, including into Decedent's own personal accounts, his other trust agency accounts, his family accounts, and other accounts controlled by Decedent. Defendants caused these transfers through their failure to control and manage the Plan and Plan assets as a reasonably careful person would have done in the same situation.

100. As a result of Defendants' failure to use reasonable care in the control and management of the Plan and Plan assets, Plaintiff was harmed in an amount according to proof.

101. Defendants' failure to use reasonable care in the management and control of the Plan and Plan's assets was a substantial factor in causing the Plaintiff's harm.

102. As a result of Defendants' negligence, Plaintiff suffered damages in an amount to be shown according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment against Defendants, as follows:

1. On Plaintiff's First, Second, Third, and Fourth Causes of Action, for losses to the Plan in an amount according to proof, plus lost interest and earnings;

2. On Plaintiff's Fifth Claim for Relief, for an injunction, that: (i) enjoins every Defendant from further transferring, disposing of, or otherwise dealing in any of the Plan's assets, (ii) orders the Defendants to return any assets that were fraudulently transferred or received from the Plan, (iii) bars any Defendants found to be fiduciaries thereafter from acting in any capacity with respect to Plan assets.

3. On Plaintiff's First through Fifth Causes of Action, for an award of Plaintiff's reasonable attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

///

4. For compensatory, punitive and other damages as may be permitted by law on Plaintiff's Sixth though Ninth Causes of Action;

5. Avoidance of all fraudulent transfers from the Plan;

6. The costs of suit; and

7. For such other and further relief as the Court may deem just and proper.

Dated: October 1, 2021   By: /s/ David A. Yudelson
David A. Yudelson

Attorney for Plaintiff
INFORMATION SYSTEMS &
BETWORKS CORPORATION